<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| JAMES E. GREENE,<br><br>        Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>        Defendant. | Civil Action No. 14-02998 (JLL)<br><br>**OPINION** |

**LINARES**, District Judge.

This matter comes before the Court upon the appeal of James Greene ("Plaintiff") from the final determination by Administrative Law Judge ("ALJ") Leonard Olarsch upholding the final decision of the Commissioner denying Plaintiff's application for Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"). The Court has jurisdiction over this matter pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), and resolves this matter on the parties' briefs pursuant to Local Civil Rule 9.1(f). After reviewing the submissions of both parties, for the following reasons, the final decision of the Commissioner is **affirmed**.

**I.    BACKGROUND**

    A.    <u>Procedural History</u>

Plaintiff filed an application for Disability Insurance Benefits under Title II of the Social Security Act on August 27, 2009. (R. at 82.) The application was denied on May 19, 2010. (R. at 106.) Upon reconsideration, Plaintiff was granted benefits for a period beginning on May 12, 2010. (R. at 88-89.) Plaintiff then filed a request for reconsideration, seeking benefits for the period of December 23, 2008 through May 12, 2010. (R. at 117-118). Plaintiff's request for

reconsideration was denied, and subsequently a request for hearing was filed on June 23, 2011. (R. at 124). A hearing was held before ALJ Leonard Olarsch on July 26, 2012. (R. at 30-73.) On August 8, 2012, ALJ Olarsch issued a decision finding that Plaintiff was not disabled during the relevant time period. (R. at 17-29). Plaintiff requested review of the ALJ's decision by the Appeals Council on August 22, 2012. (R. at 15-16). On December 31, 2013, the Appeals Council denied Plaintiff's request for review, thereby affirming the decision of the ALJ as the final decision of the Commissioner. (R. at 5-8). Plaintiff then commenced the instant action pursuant to 42 U.S.C. §§ 405(g) and/or 1383(c). (Compl. at 1.)

      B.     <u>Factual History</u>

           1. <u>Plaintiff's Testimony</u>

At the time of his hearing, Plaintiff was fifty-five years old. (R. at 33.) He worked as a train mechanic until 2008. (R. at 38.) His position as a train mechanic required standing for long periods of time and lifting heavy equipment weighing up to 300 pounds. (R. at 38-40.) In 2008, while at work, he sustained a back injury. As a result of this impairment, Plaintiff alleges that he cannot lift more than five to ten pounds, stand for more than five to fifteen minutes, or walk more than one or two blocks without experiencing pain in his back and right leg. When he climbs stairs, he takes a break after four or five steps. He also alleges that he is unable to sit in one place for too long. (R. at 40-44.)

During the day, Plaintiff spends his time watching television and trying to straighten up his home. (R. at 48.) He does not participate in social activities because he is more physically comfortable at home. (R. at 54.) To reduce his back pain, he takes medications every six hours that make him nauseous and drowsy and uses a heating pad every evening. He can no longer play

with his grandkids. (R. at 42-44.) Sometimes, he feels worthless because he can't do all the activities he used to. (R. at 47.)

        2. <u>Medical Evidence</u>

An MRI of the lumbar spine dated December 9, 2004, indicates a superimposed disc bulging and osteophytic ridge formation resulting in mild spinal stenosis at the L4-5 level, as well as a disc herniation at the L5-S1 level. (R. at 330-331.)

Since his workplace accident in 2008, Plaintiff has complained of chronic lower back pain. (R. at 856.) After his accident, he visited the VA hospital several times. He displayed a limp, muscle tenderness, and decreased strength in his right leg (R. at 856.) An MRI on January 6, 2009 showed mild to moderate multilevel degenerative disc disease, spondylosis, and moderate disc herniation at L5-S1 through L3-4 (R. at 275.) In visits to the VA hospital throughout 2009, he showed decreased range of motion, tenderness to palpation, and decreased reflexes in addition to the symptoms he displayed earlier. (Def. Br. at 7). In December 2009, an MRI showed a posterocentral disc herniation at L3-4 with thecal sac indentation and facet hypertrophy, a disc bulge at L4-5 with herniation/annular tear, facet hypertrophy and thecal sac indentation resulting in central stenosis, and a disc bulge at L5-S1 with superimposed herniation. (R. at 275.)

In November 2009, orthopedic surgeon Dr. Gregory Gallick saw Plaintiff in connection with Plaintiff's workers' compensation claim. Dr. Gallick indicated that Plaintiff had "significant disc abnormalities," but that "he can continue to work." (R. at 326.) In December 2009, Dr. Gallick noted tenderness in Plaintiff's back and recommended epidural steroid injections, but not surgery. (R. at 319-322.) Plaintiff received epidural steroid injections and experienced some pain relief. In his Progress Notes dated February 17, 2010, Dr. Gallick indicated that "there is no

reason [Plaintiff] cannot do his regular job" and again indicated that he would not consider Plaintiff a surgical candidate. (R. 320.) In March 2010, Dr. Gallick stated that Plaintiff had reached maximum medical improvement from treatment. (R. at 319.)

On April 16, 2010, Plaintiff sought a second opinion from spinal specialist and orthopedic surgeon Dr. Carl Giordano, who reviewed his MRIs and noted pre-existing spondylosis and stenosis aggravated by Plaintiff's work injury. (R. at 337.) He agreed with Dr. Gallick that Plaintiff had reached maximum medical improvement for the purposes of his workers' compensation claim and indicated that he would not place any restrictions on him based upon the work injury. (R. at 338.) After reviewing Plaintiff's history and MRIs on May 27, 2010, Dr. Giordano recommended lumbar laminectomy to decompress the nerve roots causing Plaintiff's back pain. (R. at 336.) Plaintiff underwent the recommended surgery on September 2, 2010. (R. at 344.)

On May 19, 2010, state agency medical consultant Dr. Raymond Briski completed a Physical Residual Functional Capacity Assessment. (R. at 307.) He reported that Plaintiff could occasionally lift and/or carry up to 20 pounds and frequently lift up to 10 pounds. He also indicated that Plaintiff could stand and/or walk for a total of about six hours a day in an eight-hour workday, and sit for a total of about six hours in an eight-hour workday. Dr. Briski found that Plaintiff could occasionally climb, stoop, and crouch, and frequently balance, kneel, and crawl. In his assessment of Plaintiff's symptoms, he explained that Plaintiff reports some physical capacity symptoms that are not wholly supported by his medical records. (R. at 307-314.) Dr. Briski's functional assessment is supported by Drs. Gallick and Giordano's opinions regarding Plaintiff's ability to return to work. (R. at 27.)

4

On January 11, 2010, psychologist Dr. Kim Arrington conducted a consultative evaluation of Plaintiff. Dr. Arrington noted that Plaintiff's gait and posture were normal. While his affect was irritable and his mood dysthymic, his thought processes were coherent and goal-directed and his attention and concentration intact. She opined that Plaintiff is able to follow and understand simple instructions, perform many simple tasks independently, and that he is able to maintain attention and concentration. (R. at 284-286.)

On November 26, 2010, advanced practice nurse Magdalene Shepherd completed a Medical Assessment of Physical Capacity form. Using the form's checkboxes, Ms. Shepherd indicated that, in an eight-hour work day, Plaintiff could sit for a total of three hours, stand for a total of one hour, and walk for a total of one hour. She also indicated that Plaintiff could not lift more than five to ten pounds, bend or rotate his trunk, or squat. She noted that Plaintiff could occasionally crawl, climb, reach overhead, and frequently extend his arms out and flex his neck. The nurse also found that the impairment to his ability to concentrate on tasks, attend work regularly, and maintain reasonable relationships with supervisors and coworkers was "moderately severe," suggesting that his impairment "seriously affects [his] ability to function." (R. at 346-349.)

### 3. Vocational Expert Testimony

The ALJ asked vocational expert Jackie Wilson to consider a hypothetical individual "with the claimant's education, training, and work experience, limited to the full range of light work and to occasional postural maneuvers in all postural areas" could perform Plaintiff's past relevant work. Ms. Wilson testified that, though an individual in Plaintiff's position could not perform his previous duties as a train mechanic, there are jobs in the regional and national economy that such an individual could perform. She testified that these positions included

working as a mail clerk, a counter attendant, or an assembler on a production line, as well as at sedentary jobs. (R. at 61-64).

## II.    STANDARD OF REVIEW

A reviewing court will uphold the Commissioner's factual decisions if they are supported by "substantial evidence." 42 U.S.C. §§ 405(g), 1383(c)(3); Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000). Substantial evidence is "more than a mere scintilla but may be less than a preponderance." Woody v. Sec'y of Health & Human Servs., 859 F.2d 1156, 1159 (3d Cir. 1988). It "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable person might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 565 (1988) (citation omitted). Not all evidence is considered substantial. For instance,

> [a] single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence – particularly certain types of evidence (e.g. that offered by treating physicians) – or if it really constitutes not evidence but mere conclusion.

Wallace v. Sec'y of Health & Human Servs., 722 F.2d 1150, 1153 (3d Cir. 1983) (quoting Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983)). The ALJ must make specific findings of fact to support his ultimate conclusions. Stewart v. Sec'y of Health, Educ. & Welfare, 714 F.2d 287, 290 (3d Cir. 1983).

The "substantial evidence standard is a deferential standard of review." Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004). It does not matter if this Court "acting *de novo* might have reached a different conclusion" than the Commissioner. Monsour Med. Ctr. V. Heckler, 806 F.2d 1185, 1190-91 (3d Cir. 1986) (citing Hunter Douglas, Inc. v. Nat'l Labor Relations Bd., 804 F.2d 808, 812 (3d Cir. 1986)). "The district court . . . is [not] empowered to weigh the evidence or

substitute its conclusions for those of the fact-finder." Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992) (citing Early v. Heckler, 743 F.2d 1002, 1007 (3d Cir. 1984)). A Court must nevertheless "review the evidence in its totality." Schonewolf v. Callahan, 972 F. Supp. 277, 284 (D.N.J. 1997) (citing Daring v. Heckler, 727 F.2d 64, 70 (3d Cir. 1984)). In doing so, the Court "must 'take into account whatever in the record fairly detracts from its weight.'" Id. (citing Willibanks v. Sec'y of Health & Human Servs., 847 F.2d 301, 303 (6th Cir. 1988)). A court must further assess whether the ALJ, when confronted with conflicting evidence, "adequately explain[ed] in the record his reasons for rejecting or discrediting competent evidence." Ogden v. Bowen, 677 F. Supp. 273, 278 (M.D. Pa. 1987) (citing Brewster v. Heckler, 786 F.2d 581 (3d Cir. 1986)). If the ALJ fails to properly indicate why evidence was discredited or rejected, the Court is not permitted to determine whether the evidence was discredited or simply ignored. See Burnett v. Comm'r of Soc. Sec, 220 F.3d 112, 121 (3d Cir. 2000) (citing Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981)).

**III.   APPLICABLE LAW**

    A.   <u>The Five-Step Process for Evaluating Whether a Claimant Has a Disability</u>

A claimant's eligibility for benefits is governed by 42 U.S.C. § 1382. Pursuant to the Act, a claimant is eligible for benefits if he meets the income and resource limitations of 42 U.S.C. §§ 1382a and 1382b and demonstrates that he is disabled based on an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §1382c(a)(3)(A). A person is disabled only if his physical or mental impairment(s) are "of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work

experience, engage in any other kind of work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

To determine whether the claimant is disabled, the Commissioner performs a five-step sequential evaluation. 20 C.F.R. § 416.920. The claimant bears the burden of establishing the first two requirements. The claimant must establish that he (1) has not engaged in "substantial gainful activity" and (2) is afflicted with "a severe medically determinable physical or mental impairment." 20 C.F.R. §404.1520(a)-(c). If a claimant fails to demonstrate either of these two requirements, DIBs are denied and the inquiry ends. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987). If the claimant successfully proves the first two requirements, the inquiry proceeds to step three which requires the claimant to demonstrate that his impairment meets or medically equals one of the impairments listed in 20 C.F.R. Part 404 Appendix 1. If the claimant demonstrates that his impairment meets or equals one of the listed impairments, he is presumed to be disabled and therefore, automatically entitled to DIBs. Id. If he cannot make the required demonstration, further examination is required.

The fourth step of the analysis asks whether the claimant's residual functional capacity ("RFC") permits him to resume his previous employment. 20 C.F.R. §416.920(e). If a claimant is able to return to his previous employment, he is not disabled within the meaning of the Act and is not entitled to DIBs. Id. If the claimant is unable to return to his previous employment, the analysis proceeds to step five. At this step, the burden shifts to the Commissioner to demonstrate that the claimant can perform a job that exists in the national economy based on the claimant's RFC, age, education, and past work experience. 20 C.F.R. § 416.920(g). If the Commissioner cannot satisfy this burden, the claimant is entitled to DIBs. Yuckert, 482 U.S. at 146 n.5.

B.  The Requirement of Objective Evidence

Under the Act, disability must be established by objective medical evidence. "An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the [Commissioner] may require." 42 U.S.C. § 423(d)(5)(A). Notably, "[a]n individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability as defined in this section." Id. Specifically, a finding that one is disabled requires:

> [M]edical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all evidence required to be furnished under this paragraph . . . would lead to a conclusion that the individual is under a disability.

Id.; see 42 U.S.C. § 1382c(a)(3)(A). Credibility is a significant factor. When examining the record: "The adjudicator must evaluate the intensity, persistence, and limiting effects of the [claimant's] symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work-related activities." SSR 96-7p, 1996 WL 374186 (July 2, 1996). To do this, the adjudicator must determine the credibility of the individual's statements based on consideration of the entire case record. Id. The requirement for a finding of credibility is found in 20 C.F.R. § 416.929(c)(4). A claimant's symptoms, then, may be discredited "unless medical signs or laboratory findings show that a medically determinable impairment(s) is present." 20 C.F.R. § 416.929(b). See also Hartranft v. Apfel, 181 F.3d 358, 362 (3d Cir. 1999).

The list of "acceptable medical sources to establish whether [a claimant] has a medically determinable impairment" includes licensed physicians, but does not include nurses. 20 C.F.R. § 404.1513(a). Though the ALJ "may also use evidence from other sources to show the severity of

[a claimant's] impairments," this evidence is "entitled to consideration as additional evidence" and does not need to be given the same weight as evidence from acceptable medical sources. 20 C.F.R § 404.1513(d)(1). Hatton v. Comm'r of Soc. Sec., 131 Fed. Appx. 877, 878 (3d Cir. 2005). Factors to consider in determining how to weigh evidence from medical sources include (1) the examining relationship, (2) the treatment relationship, including the length, frequency, nature, and extent of the treatment, (3) the supportability of the opinion, (4) its consistency with the record as a whole, and (5) the specialization of the individual giving the opinion. 20 C.F.R. § 404.1527(c).

## IV.  DISCUSSION

Plaintiff argues that the ALJ erred at step four by improperly weighing Ms. Shepherd and Dr. Giordano's opinions and at step five by posing an inadequate hypothetical to the vocational expert. (Pl. Reply Br. at 1, 6-7.) Plaintiff asserts that Ms. Shepherd's opinion was improperly rejected, that she did examine and treat him, and that her assessment was not inconsistent with the treating and examining doctors'. (Pl. Reply Br. at 1-3.) Further, Plaintiff argues that the ALJ should have given more weight to Dr. Giordano's assessment. (Pl. Reply Br. at 6). Finally, Plaintiff argues that the hypothetical question upon which the vocational expert's opinion was based was incomplete because the ALJ did not include mental impairments in the hypothetical question he posed. (Pl. Reply Br. 7-9.)

A. <u>There is substantial evidence supporting the ALJ's decision to give more weight to Drs. Giordano, Gallick, and Briski's opinions and less weight to Ms. Shepherd's</u>

First, Greene argues that the ALJ "rejected Ms. Shepherd's opinion for an improper reason." (Pl. Reply Br. at 1.) The Court finds that ALJ did not improperly reject Ms. Shepherd's opinion. He adequately explained in his decision his reasons for granting little weight to her

opinion, indicating that he did so because her findings are inconsistent with the findings of Plaintiff's other medical sources and with his own reported activities of daily living. (R. 27).

Greene also challenges the ALJ's assertion that "there are no treatment records…and it is not clear if she has treated [him] at all," pointing to several places in the record where Ms. Shepherd examined or treated Greene. (Pl. Reply Br. at 2.) The Court finds that although there are records indicating that Ms. Shepherd examined or treated Plaintiff while at the VA hospital, her opinion was appropriately given less weight than Dr. Gallick and Dr. Giordano's. As a nurse, Ms. Shepherd is not an acceptable medical source for establishing whether Plaintiff has a medically determinable impairment. 20 C.F.R. § 404.1513(a). Additionally, when considering the factors under 20 C.F.R. § 404.1527(c), it is clear that Dr. Gallick, Dr. Giordano, and Dr. Briski's opinions were entitled to more weight than Ms. Shepherds.

> 1. <u>Dr. Gallick and Dr. Giordano's opinions were appropriately given more weight because they both had more substantial examining and treating relationships with Plaintiff</u>.

Dr. Gallick, Dr. Giordano, and Ms. Shepherd each have experience examining and treating Plaintiff. (R. 275-278, 319-349.) Between November 10, 2009 and March 16, 2010, Dr. Gallick saw Plaintiff at least eleven times, provided him with epidural steroid injections, interpreted his MRIs, and diagnosed his spinal injuries (R. at 319-327.) Between April 16, 2010 and September 20, 2010, Dr. Giordano saw Plaintiff at least five times and performed surgery on his back (R. at 335-346.) Ms. Shepherd's interactions with Plaintiff were limited to evaluations for medical complaints, including results of examinations, assessments, and medication reviews (Def. Br. at 7.) There is substantial evidence in the record to indicate that Dr. Gallick and Dr. Giordano had more significant relationships with Plaintiff than did Ms. Shepherd, and so giving less weight to Ms. Shepherd's assessment was appropriate.

      2. <u>Dr. Gallick, Dr. Briski, and Dr. Giordano's opinions were more supportable than Ms. Shepherd's assessment.</u>

The ALJ found that Dr. Gallick and Dr. Giordano's opinions were more supported with "laboratory findings and medical signs" than Ms. Shepherd's. 20 C.F.R. § 404.1527(c)(3). "The degree to which [a medical source] provides supporting explanations for their opinions" affects the weight the ALJ will give to a medical source's opinion. 20 C.F.R. § 404.1527(c)(3). Dr. Gallick and Dr. Giordano each based their opinions on their examination of MRIs and the results of a variety of tests and provided explanations for their opinions (Def. Br. at 4). Dr. Briski completed a residual functional capacity assessment, citing specific facts upon which his conclusions are based. (R. at 305-314.) Ms. Shepherd evaluated Plaintiff for his medical complaints, but her check-box Medical Assessment of Physical Capacity form provided no supporting explanations for her opinions. (R. at 347-49). Accordingly, the Court finds that Ms. Shepherd did not provide any supporting explanation for her opinion, and there is substantial evidence in the record to support the ALJ's decision to give little weight to her opinion.

      3. <u>Dr. Gallick, Dr. Giordano, and Dr. Briski's opinions were more consistent with the record as a whole than Ms. Shepherd's assessment.</u>

Dr. Gallick and Dr. Giordano's opinions are consistent with Dr. Briski's physical residual functional capacity assessment and with Plaintiff's medical records. Dr. Gallick's progress notes indicate that "there is no reason [Plaintiff] cannot do his regular job" and recommended that Plaintiff "continue with work" (R. at 319-320.) Consistent with this, Dr. Giordano's assessment of Plaintiff on May 24, 2010 states that Plaintiff "has managed reasonably well over the years and is managing reasonably well now" and that he "would not place any restrictions on him." (R. at 338.) Dr. Giordano also states that Plaintiff's complaints will not "alter the natural history of his aging process" and that he "would defer to [Plaintiff's] judgment to seek whatever

employment he feels comfortable performing." (R. at 338.) This is also consistent with Dr. Briski's assessment of May 19, 2010. Dr. Briski indicated that Plaintiff could occasionally lift and carry 20 pounds, frequently lift and carry ten pounds, stand and walk for a total of about six hours in an eight-hour work day, and sit for a total of about six hours in an eight-hour work day. (R. at 308.) Dr. Briski also stated that Plaintiff "reports some limitations that are not wholly supported by the [medical evidence of record]." (R. at 309, 312.)

Ms. Shepherd's assessment is inconsistent with the rest of the record. Contrary to the opinions of Dr. Gallick and Dr. Giordano, Ms. Shepherd's assessment indicates that Plaintiff's symptoms constitute "an impairment which seriously affects [his] ability to function." (R. at 349.) Her findings are also contrary to Dr. Briski's findings. Ms. Shepherd indicated that Plaintiff cannot sit for longer than an hour, stand for longer than a half hour, or walk for longer than an hour. She also indicated that, in an eight-hour work day, Plaintiff could sit for no more than three hours, stand for one hour, and walk for one hour. The Court concludes that due to this inconsistency, it was appropriate for the ALJ to give little weight to her opinion and there is substantial evidence in the record supporting his decision to do so.

4. <u>Since Dr. Gallick and Dr. Giordano are specialists, their opinions were appropriately given more weight than Ms. Shepherd's opinion.</u>

Dr. Gallick is an orthopedic surgeon. Dr. Giordano is a spine specialist and an orthopedic surgeon. Ms. Shepherd is an Advanced Practice Nurse. As such, Dr. Gallick and Dr. Giordano's opinions were appropriately granted more weight than Ms. Shepherd's.

This Court cannot substitute its conclusions for those of the fact-finder. It is within the ALJ's discretion to weigh the medical evidence. The ALJ did not improperly weigh Ms. Shepherd's opinion; substantial evidence supports his decision to give consistent, supportable opinions more weight and an inconsistent opinion less weight.

Plaintiff contends that Dr. Giordano's assessment should have been given more weight (Pl. Reply Br. at 6.) He argues that the ALJ erroneously found that Dr. Giordano did not adequately explain why he found that Plaintiff was at maximum medical improvement for workers' compensation purposes and that he might benefit from surgery. Whether these positions are inconsistent is not relevant. Dr. Giordano's surgical recommendation and subsequent procedure do not suggest that Plaintiff was disabled during the period from December 23, 2008 through May 12, 2010. Whether it was improper for the ALJ to decide not to give more weight to Dr. Giordano's opinion was not dispositive. The ALJ gave some weight to Dr. Giordano's opinion and substantial weight to Dr. Briski's opinion. Dr. Giordano's opinion is consistent with Dr. Gallick and Dr. Briski's opinions. Accordingly, the Court holds that had the ALJ given Dr. Giordano's opinion more weight, the result would have been the same.

B.  <u>Substantial evidence supports the hypothetical posed to the vocational expert.</u>

Plaintiff argues that because the ALJ's hypothetical did not include Plaintiff's alleged mental limitations, it was inadequate. A vocational expert's testimony must be based upon a hypothetical that "accurately portrays the claimant's individual physical and mental impairments" <u>Podedworny v. Harris</u>, 745 F.2d 201, 218 (3d Cir. 1984). However, an ALJ's hypothetical question need not include "every impairment *alleged* by a claimant," but only those that are "medically established." <u>Rutherford v. Barnhart</u>, 399 F.3d 546, 554 (3d. Cir. 2005). Here, the ALJ asked the vocation expert if, assuming that

> we have an individual with the claimant's education, training, and work experience, limited to the full range of light work and limited to occasional postural maneuvers…there are any jobs that exist in the region or national economy that a person so described could perform?

(R. at 62.) This hypothetical includes Plaintiff's physical limitations established through medical sources. Plaintiff's medical records show no psychiatric treatment or medication. (R. at 27). He also performed well on the mental status examination. (R. at 285). The only medical source to provide any indication that Plaintiff has any mental impairment is Ms. Shepherd, who is not a licensed physician and whose opinion was appropriately given little weight. The ALJ indicated that if Plaintiff does have any mental impairment, it is "accommodated by the limitation to unskilled work… [and] does not warrant any additional limitations" (R. at 26.) Plaintiff himself acknowledged in his function report of October 2, 2009 that he can pay attention, complete tasks, and follow written and spoken instructions "very well" (R. at 236.) The ALJ properly evaluated the medical record and fairly posed a hypothetical including all of Plaintiff's credibly established functional limitations. Therefore, the Court finds that there is substantial evidence in the record to support the ALJ's decision not to incorporate Plaintiff's alleged mental limitations into the hypothetical question.

Accordingly, this Court finds that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence. As such, the final decision of the Commissioner is affirmed.

## V. CONCLUSION

For the foregoing reasons, the decisions of the Commissioner and the ALJ are **affirmed**. An appropriate order follows this Opinion.

DATED: 28th of May, 2015.

s/ Jose L. Linares_____
JOSE L. LINARES
U.S. DISTRICT JUDGE